```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

JESSIE McKIM,                    )
                                 )
            Petitioner,          )
                                 )
     v.                          )    No. 4:04 CV 252 DDN
                                 )
DAVE DORMIRE,                    )
                                 )
            Respondent.          )
```

## MEMORANDUM OPINION

Petitioner Jessie McKim, a Missouri state prisoner, brought this action for a writ of habeas corpus under 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).

## Background

On April 29, 1999, a jury in the Circuit Court of Adair County found petitioner guilty of the first-degree murder of Wendy Wagnon. The jury found petitioner not guilty of the unlawful restraint of Wagnon and not guilty of armed criminal action. The jury assessed the punishment at life imprisonment without probation or parole. (Doc. 9 Ex. 3 at 988, Ex. 4 at 78-80.) On June 7, 1999, the court sentenced petitioner to life in prison without the possibility of probation or parole. (Id. Ex. 3 at 995; Ex. 4 at 90-91). The Missouri Court of Appeals affirmed the circuit court judgment on August 29, 2000. (Id. Ex. 7.) On November 30, 2000, petitioner moved the circuit court for post-conviction relief under Missouri Supreme Court Rule 29.15. (Id. Ex. 9 at 3.) Following an evidentiary hearing, the court denied the motion. (Id. Ex. 8, Ex. 9 at 24-36.)

Petitioner alleges the following grounds for relief:
    1.   Petitioner received ineffective assistance of counsel "by his counsel's failure to contact or call as a witness Deputy Donna Morrison, Chariton County Jail Administrator, who would have provided testimony impeaching the testimony of state witness Dana Cooper." (Doc. 1 at 8-9.)

2. Petitioner was denied due process of law because the trial court permitted the late endorsement of Pam Western as a state's witness, denied petitioner's motion for a continuance for an opportunity to investigate Western's possible bias and motive for coming forward, and admitted Western's testimony into evidence about a statement petitioner made that if he found out the victim was a snitch he would kill her. (Id. at 9.)

3. Petitioner was denied due process of law when, a "jailhouse snitch," who "had access to the legal papers and files of the petitioner," testified for the state based on information he had obtained after petitioner was represented by counsel. (Id.)

4. Petitioner received ineffective assistance of counsel because his attorney "failed to contact and call multiple material witnesses." (Id. at 10.)

In its response, the state argues that all four grounds are without merit and that Grounds 3 and 4 are procedurally defaulted.

## Procedural Default

Under the doctrine of procedural default, "a habeas petitioner must have raised both the factual and legal bases for each . . . claim in the state courts in order to preserve the claim for federal [habeas corpus] review." King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc) (quoted case omitted). A petitioner's failure to present a claim on appeal from a state court ruling raises a procedural bar to pursuing that claim in a habeas action in federal court. Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997); Boyd v. Groose, 4 F.3d 669, 671 (8th Cir. 1993).

Petitioner may avoid the procedural bar, if he "supplements his constitutional claim with a colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986). In making such a showing, a petitioner must

> show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.

Id. at 455 n.17. To invoke the actual innocence exception to the procedural fault as a gateway to considering the merits of a constitutional claim, petitioner must show that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995).

As stated above, respondent argues that petitioner failed to exhaust his available state court remedies as to Grounds 3 and 4. Petitioner argues that the fact that he did exhaust his remedies is being suppressed by the state's failure to provide this court with all the relevant records of his litigation efforts. Whether or not the petitioner has properly presented his federal habeas grounds to the state courts, if the federal habeas court determines that any such ground is without merit, the federal court may proceed to deny relief on the merits. See 28 U.S.C. § 2254(b)(2).

## Standard of Review

Habeas relief may be granted by a federal court on a claim previously adjudicated on its merits in a state court only when petitioner can show the state court decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999). The issue this court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000)(concurring opinion of O'Connor, J.). A federal habeas court may not issue a writ

under the "unreasonable-application" clause "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411; see also Johnston v. Luebbers, 288 F.3d 1048, 1050 (8th Cir. 2002).

### **Ground 1**

In Ground 1, petitioner alleged trial counsel was constitutionally ineffective for failing to call Deputy Donna Morrison as a witness.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court defined ineffective assistance of counsel under the Sixth and Fourteenth Amendments. The Strickland test requires federal habeas corpus relief, if it is shown that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

There are two elements to a claim of ineffective assistance of counsel. A habeas petitioner must first demonstrate that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. In this regard, petitioner must overcome a strong presumption that counsel has rendered constitutionally effective assistance. Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987). Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following less thorough, but nevertheless reasonable, investigation are to be upheld to the extent that they are supported by reasonable judgment. Strickland, 466 U.S. at 690-91.

The second element of the Strickland test requires that a habeas petitioner demonstrate that he was actually prejudiced by counsel's dereliction of duty. Id. at 687. To show prejudice, the habeas petitioner must establish that counsel's deficient performance rendered the outcome of the proceeding unreliable or fundamentally unfair. Strickland, 466 U.S. at 687; Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In addition, the prejudice must not be simply a "possibility" but an "actual and substantial disadvantage, infecting [petitioner's] entire trial with error of constitutional dimensions." United States

- 4 -

v. Frady, 456 U.S. 152, 170 (1982).

When a claim of ineffective assistance of counsel is based on the alleged failure to locate and present a witness, the petitioner must show that the witness would have testified and that such testimony would have probably resulted in an acquittal. Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994); Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990).

Petitioner's former cell mate, Dana Cooper, testified at trial that he and petitioner were in jail together about a month or two. They talked a lot. After a while, petitioner opened up to Cooper. Cooper testified that petitioner told him many times that "a good snitch is a dead snitch," and that petitioner believed Wendy Wagnon was a snitch. Petitioner told him that petitioner confronted Wagnon with the accusation and, when he had her in a car by himself, he fought with her and strangled her. Cooper also testified about what petitioner did to dispose of her body. (Doc. 9 Ex. 2 at 447-51.)

In his Rule 29.15 motion, petitioner alleged that jail employees could have testified that Dana Cooper was alone in his cell, and, therefore, had an opportunity to gather information from petitioner's legal files. (Id. Ex. 9 at 18, ¶ 4.)

At the post-conviction evidentiary hearing, Chariton County Deputy and Jail Administrator Donna Morrison testified that for some period of time petitioner and Cooper shared a cell, that prisoners had the option of leaving their cells for outdoor recreation or not, that each inmate has an unlockable footlocker in the cell for such items as legal documents, that one inmate improperly going through another inmate's footlocker would be obvious to jail personnel, and that petitioner McKim never complained that Cooper went through his locker. (Id. Ex. 8 at 7-20.)

Petitioner's trial attorney, Kirk Zwink, also testified at the post-conviction evidentiary hearing. He testified that he represented petitioner as the Public Defender of Adair County. Before trial he and petitioner discussed the expected testimony of Dana Cooper and the possibility they could call jailers to testify about how Cooper could have learned about the case from looking through petitioner's papers.

Zwink discussed this with an experienced attorney who was second chairing him in petitioner's case. They concluded that to try to prove that Cooper got his information from police reports in petitioner's papers instead of from petitioner would be hazardous. This is because the jury might think that, even though Cooper did not get the information in statements from petitioner, Cooper got the information from accurate police reports and the jury might convict petitioner on this basis. (Id. at 21-28.)

The circuit court found that not calling Morrison was reasonable trial strategy, and denied the motion. Specifically, the court determined that Morrison's potential testimony would not have provided substantial proof that Cooper actually read petitioner's papers, and that it was better strategy to get any helpful information from cross-examining Cooper at trial, which was done. (Id. Ex. 9 at 30, 36.)

On appeal to the Missouri Court of Appeals, McKim argued that Morrison's testimony at trial would have impeached that of Cooper by showing that Cooper had access to petitioner's papers (Id. Ex. 10 at 12) and that the fact that Cooper had access to petitioner's legal papers and correspondence would have impeached Cooper's testimony that petitioner had confessed to him behind bars (id. at 13).

Denying this point on appeal, the Missouri Court of Appeals applied Strickland v. Washington, 466 U.S. 668 (1984). (Doc. 9 Ex. 12 at 2.) The court agreed that, based on the evidentiary hearing, Morrison's testimony would not have supported an inference that Cooper learned of the murder by looking through petitioner's papers. (Id. at 3-4.) Further, the court determined that petitioner's attorney's decision that Morrison's testimony would have done more harm than good was not unreasonable. (Id.)

This court concludes that the Missouri courts properly and reasonably applied to the facts of the case the applicable Strickland test.

Ground 1 is without merit and is denied.

## Ground 2

Petitioner alleges his due process rights were violated when the

trial court permitted a late endorsement of a witness and denied his request for a continuance.

On April 5, 1999, the state moved the circuit court to endorse witness Pam Western, three weeks before the trial began. (Doc. 9 Ex. 1 at 113.) Defense counsel immediately objected because it was too close to trial and because she would need to be investigated. (Id. at 113-14.) With three weeks left before trial, the court found sufficient time to depose and investigate, and sustained the motion. (Id. at 114-15.). On April 23, 1999, petitioner argued for reconsideration, but the trial court again sustained the endorsement, and then overruled petitioner's request for a trial continuance. ( Id. at 122-26.)

Western eventually testified that McKim told that "[i]f he found out that Wagnon was a snitch that he would kill her." (Id. Ex. 2 at 613.) However, when asked in a follow-up question "[D]id you think that much of that statement at that time?" Western answered "No, I did not." (Id.) Western added, "Because I've said it before to people, not meaning it. To me it was just words rambling off his tongue." ( Id.)

Petitioner appealed this issue to the Missouri Court of Appeals. (Id. Ex. 5 at 23-29.) The court found no reversible error in either the endorsement or the denial of continuance. (Id. Ex. 7 at 1-3, 6.) It held that petitioner "did not know what further investigation would reveal . . . [and] was asking the [trial] court to speculate about the existence of other evidence." (Id. at 1.) The court noted further that the oral request for continuance did not comply with procedural requirements;[1] and that in any case the denial was not prejudicial. "McKim was not surprised by Western's testimony. He was able to depose her before trial, and her testimony led McKim to another witness, Tracy Bartz, whose testimony contradicted Western's statements." (Id. at 2.)

In Armstrong v. Kemna, 365 F.3d 622, 627 (8th Cir. 2004), to resolve a due process habeas claim, the court looked to the Supreme Court's statement in a case involving ineffective assistance of counsel:

> Not every restriction on counsel's time or opportunity to

---

[1]Mo. R. Crim. P. 24.09 requires motions for continuance to be written unless: "(a) The adverse party consents, or (b) The court finds good cause."

> investigate or to consult with his client or otherwise to
> prepare for trial violates a defendant's Sixth Amendment
> right to counsel. Trial judges necessarily require a great
> deal of latitude in scheduling trials. Not the least of
> their problems is that of assembling the witnesses, lawyers,
> and jurors at the same place at the same time, and this
> burden counsels against continuances except for compelling
> reasons. Consequently, broad discretion must be granted
> trial courts on matters of continuances; only an unreasoning
> and arbitrary 'insistence upon expeditiousness in the face of
> a justifiable request for delay' violates the right to the
> assistance of counsel.

Morris v. Slappy, 461 U.S. 1, 11-12 (1983)(citations omitted).

This court finds that the Missouri trial and appellate courts were neither "unreasoning" nor "arbitrary" in permitting Western's endorsement three weeks before trial, nor in denying the motion for continuance, given the broad discretion afforded trial court judges. The court found that three weeks was ample time to investigate this witness, and this determination was not an abuse of the trial court's discretion. In fact, petitioner's attorney did interview and depose Western.

Ground 2 is denied.

### Ground 3

In his third ground for federal habeas relief, petitioner claims that the state violated his constitutional rights by using cellmate Cooper as a "jailhouse snitch" to whom petitioner, without his attorney present, confessed responsibility for the killing. Ground 3 fails on its merits. In the fall of 1997, petitioner was in the same cell as state's witness Dana Cooper. (Doc. 9 Ex. 2 at 445.) Cooper testified at trial that he and petitioner "talked a lot, because it wasn't a real big area for the six man tank." (Id. at 447.) Cooper then stated that "without a doubt [petitioner] believed [Wendy Wagnon was a snitch]" and that "[petitioner] told me many times, 'A good snitch is a dead snitch.'" (Id. at 448.) According to Cooper, petitioner told him that Wagnon "expired in [petitioner's] arms. That she died in his grip." (Id. at 450.) Cooper's final assertion on direct was that he had contacted the prosecutor and offered to testify because he "didn't want

[his] conscience on that," he "[doesn't] believe in murder," and he received nothing from the state in return for his cooperation. (Id. at 454-55.) On cross-examination, respondent's attorney addressed Cooper's motive(s) in contacting the prosecutor:

    Q.    [Y]ou had a way out, didn't you?

           . . .

    A.    Yeah.

    Q.    . . . [Y]ou just informed him that you had all the information that he could want, is that right?

    A.    Yeah.

    Q.    And you asked him to contact you?

    A.    Yup.

    Q.    And you wanted him to do it in secret?

    A.    Well, I didn't want everybody in the jail to know that I was talking to a prosecutor.

           . . .

    Q.    [A]nd you asked him to help get leniency . . . in the case that you had in Cooper County – didn't you?

    A.    Right.

    Q.    And you not only sent one letter asking for it, you repeatedly sent letters to him asking for that?

    A.    About a half dozen of 'em.

(Id. at 468-69, 471.)

    Despite this attempt to impeach Cooper with his willingness to testify, the defense never showed that Cooper was an agent of the state at the time of the alleged confession. Nor did petitioner raise this issue either in his Rule 29.15 motion or on appeal.

    Petitioner cites Maine v. Moulton, 474 U.S. 159 (1985), to support his ground for relief. However, in Moulton, the "jailhouse snitch" was an agent of the state. Here, there is no evidence that Cooper was an

agent of the government.[2]

Ground 3 is without merit and is denied.

### Ground 4

In Ground 4, petitioner alleges that his trial counsel was ineffective for failing to investigate or call several witnesses.

Ground 4 is without merit. Denying post-conviction relief, the circuit court applied Strickland, implying that the decision not to call any of the listed witnesses was reasonable trial strategy. (Doc. 9 Ex. 9 at 25-26, citing Strickland, 466 U.S. at 695.) This court finds that, while petitioner gave his attorney names of witness he wished to be called to testify at trial (see Doc. 9 Ex. 8 at 22), Zwink used reasonable strategy in not calling them to testify.

Petitioner's attorney had decided "not . . . to try and disprove that [McKim] was present at Peavler's house [where the victim was allegedly killed] because of the overwhelming evidence that [McKim] was there." (Doc. 9 Ex. 9 at 29, ¶ 14.) None of the witnesses McKim lists in Ground 4 was suggested in his motion for any purpose other than to provide him with an alibi (id. at 18-19, ¶¶ 1-3, 5-6), except for Joe Morris and Jim Jennings, who were proffered for the same reason as Donna Morrison in Ground 1, supra (i.e., that Dana Cooper had access to petitioner's legal material). (Doc. 9 Ex. 9 at 19, ¶ 5.) Moreover, petitioner did not produce any of these potential witnesses at his Rule 29.15 evidentiary hearing, "so th[e circuit c]ourt [wa]s unable to determine whether [they] would have testified if called, and . . . whether [their] testimony would have provided [petitioner] with a viable

---

[2] In Moulton, the defendant's co-defendant, Gary Colson, agreed to cooperate with the police as an undercover informant. 474 U.S. at 163. The defendant then made incriminating statements to Colson in a conversation recorded by the police. Id. at 164-65. The Supreme Court held that "[b]y concealing the fact that Colson was an agent of the State, the police denied [the defendant] the opportunity to consult with counsel and thus denied him the assistance of counsel guaranteed by the Sixth Amendment." Id. at 177; see also Kuhlmann v. Wilson, 477 U.S. 436, 439 (1986) (cellmate "had entered into an arrangement . . . according to which [he] agreed to listen to respondent's conversations and report his remarks to" a police detective).

defense." (Id. at 27-28, 31-32.)

This court agrees with the trial court that trial counsel's strategic decision not to call what were essentially alibi witnesses was reasonable.

Ground 4 is denied.

For the reasons stated above, the petition of Jessie McKim for a writ of habeas corpus is denied. A separate order is issued herewith.

_____
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 28, 2006.